**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MORRIS A. JACKMON,** | Civ. No. 18-149 (KM) (SCM) |
| **Plaintiff,** | |
| | **OPINION** |
| v. | |
| **NJ DEPARTMENT OF CORRECTIONS,** | |
| **Defendant.** | |

## KEVIN MCNULTY, U.S.D.J.:

Plaintiff Morris Jackmon, a state prisoner at East Jersey State Prison, filed a civil rights complaint against the New Jersey Department of Corrections ("Department") alleging violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et. seq. (DE 1-1). Currently pending before this Court is Jackmon's motion for a temporary restraining order ("TRO") or preliminary injunction. (DE 31). For the following reasons, Jackmon's motion is **DENIED**.

### I. BACKGROUND

#### A. The Complaint and the Motion to Dismiss

In October 2017, Jackmon filed a complaint in New Jersey state court, alleging violations under RLUIPA and seeking injunctive relief against the Department. On January 5, 2018, the Department filed a notice of removal to the United States District Court. (DE 1).

In his complaint, Jackmon alleges that he is a sincere member of the Nation of Gods and Earths ("Nation"). (DE 1-1 at 2.) As a member of the Nation, Jackmon states that he is compelled to practice various religious activities, including:

> (a) teaching others about the knowledge of who God is, (b) study the Supreme Mathematics, Supreme Alphabets, 120 Degrees,

Universal Flag, monthly National Statements, and "The Five
Percenter" newspaper periodicals, (c) observe holy days, which
include the anniversaries of the birth and death of our founder,
Clarence 13X Smith, also known as Father Allah, and the
birthdays of Elijah Muhammad and Fard Muhammad, (d) conduct
Civilization Classes, in which senior members educate newer
members about the lessons and how they can be applied, and (e)
gather monthly for "Parliaments" and "Rallies", during which
members make collective decisions and help one another learn
their lessons.

(*Id.* at 3–4).

Jackmon explains that in 1998 the Department enacted a policy that designated the Nation as a Security Threat Group ("STG). (*Id.* at 5). According to Jackmon, activities of all designated STGs are restricted:

These activities include but are not limited to: Possession of STG
literature such as, lessons, membership lists, manuals and
artwork; Possession of STG paraphernalia such as[] beads,
artwork, medallions and clothing articles; Observation by staff of
known STG hand-signs and/or signals; Participation in STG
related assaults, disturbances, meetings, gatherings, incidents and
events; Sending or receiving STG related correspondence;
Recruiting of other inmates to join an STG.

(*Id.* at 4).

Jackmon alleges that because of this designation he is unable to exercise his religious beliefs and that the Department has substantially burdened his religious exercise. (*Id.* at 5). Jackmon seeks injunctive relief requiring the Department to remove the Nation from the list of STGs and to permit him and others to engage in its religious practice. (*Id.* at 6).

On January 25, 2018, the Department filed a motion to dismiss the complaint under Rule 12(b)(6), arguing that Jackmon failed to state a claim upon which relief can be granted. (DE 3). I denied that motion on July 20, 2018 (DE 15), finding "that Jackmon ha[d] pled facts sufficient to show that the Department's policy substantially burdens his sincerely held religious beliefs,"

(*id.* at 6), and that "his burden [was] only to plead sufficient factual matter to state a claim for relief that is plausible on its face," (*id.* at 7).

### B. The Amended Complaint and the Temporary Restraining Order

On November 5, 2018, Jackmon moved to amend his complaint. (DE 27). The Court granted this motion on March 21, 2019, giving Jackmon ten days to file the amended complaint. (DE 34). Jackmon has not yet filed an amended complaint. However, he filed a *proposed* amended complaint alongside the November 5, 2018 motion. (DE 27-2).

In his proposed amended complaint, Jackmon again alleges that the Department's designation of the Nation as an STG violates RLUIPA. (*Id.* at 1–8). He reiterates his request that this Court require the Department to remove the STG stigma from the Nation and to "permit plaintiff and other Nation adherents to practice, without impunity, the [Nation's] theological activities." (*Id.* ¶ 18).

On March 8, 2019 Jackmon moved for a TRO. (DE 31). He alleges the following additional facts and asserts the following arguments:

> [D]isciplinary charges were issued and several books related to the [Nation] were confiscated.
>
> . . . The [Department's] "Unauthorized Publications List" dated January 28, 2019, was circulated containing several [Nation] publications resulting in increased confiscation and disciplinary actions . . . .
>
> . . . The Special Investigations Division ("SID") quietly suggested an informal agreement to *some* . . . [Nation] adherents that they could possess and study the "Lessons" in their cells, but, those "Lessons" could not be shared with others.
>
> . . . Enforcement of informal agreements imposes an asserted goal of extrajudicial sanctions on plaintiff that is attenuated to render the distinction arbitrary and irrational.
>
> . . . As a result of this filing, the [Department is] now engaged in what appears to be acts of retaliation, i.e., the writing of disciplinary charges, and the confiscation of books and other materials related to the [Nation]. For example, . . . [s]even days [after Jackmon filed this lawsuit,] on 10/23/17, [Nation] adherent[] Eddie Hall, #575224, was adjudicated guilty of *.011. . . . [O]n

3

March 2, 2018, [the Department] adjudicated [Nation] adherent Nur-Raheem Pack, #290223, guilty of *.011, Ramil Robinson, #816381, guilty of *.011 on January 16, 2019, and Reginald Venable, #447824 guilty of *.011 on February 25, 2019.[1]

. . . [The Department's] acts of retaliation expose[] plaintiff to N.J.A.C. 10A:4-4.1(2)(vii), [similar to how] other [Nation] adherents were recently charged.

. . . It is currently the formal policy of the [Department], SID, the Hearing Officer, and the Disciplinary Sergeant that the [Nation] as a whole is designated as a STG.

. . . The [Department's] reliance on N.J.A.C. 10A:4-4.1(2)(vi)(vii), rationalizes the continued theological discrimination and disparate impact caused to plaintiff as a result of the STG label that places plaintiff between a rock and a hard place.

. . . As a result of the current policy [Jackmon is] subject to the following sanctions even as this litigation is pending:

> a. A sanction of no less than 91 days and no more than 180 days of administrative segregation per unless a medical or mental health professional determines that the inmate is not appropriate for administrative segregation placement;
>
> b. Loss of one or more correctional facility privileges up to 30 calendar days;
>
> c. Loss of commutation time up to 365 calendar days, subject to confirmation by the Administrator;
>
> d. Loss of furlough privileges for up to two months;
>
> e. Up to two weeks confinement to room or housing area;
>
> f. Any sanction prescribed for On-The-Spot Correction;
>
> g. Confiscation; and/or;

---

[1] N.J.A.C. § 10A:4-4.1 enumerates "inmate prohibited acts." *.011 is "possession or exhibition of anything related to a security threat group." *Id.* at (a)(2)(vi). As a Category B prohibited act, *.011 carries "a sanction of no less than 91 days and no more than 180 days of administrative segregation per incident" as well as other sanctions. *Id.* at (a)(2); *see also* § N.J.A.C. 10A:4-5.1(g) (enumerating additional Category B sanctions).

4

> h. Up to 14 hours extra duty, to be performed within a maximum of two weeks.

(*Id.* at 8–10).

## II. DISCUSSION

### A. Standard of Review

A plaintiff seeking a preliminary injunction must establish

[1] that he is likely to succeed on the merits,

[2] that he is likely to suffer irreparable harm in the absence of preliminary relief,

[3] that the balance of equities tips in his favor, and

[4] that an injunction is in the public interest.

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (line breaks and numbering added); *accord Am. Ex. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004); *see also Adams v. Freedom Forge Corp.*, 204 F.3d 475, 486 (3d Cir. 2000) (movant bears the burden of establishing these elements).

The requirements for a TRO are similar. *See Otsuka Pharm. Co., Ltd. v. Torrent Pharm. Ltd., Inc.*, 99 F. Supp. 3d 461 (D.N.J. April 16, 2015); *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 538 (D.N.J. 1999).

A court will consider all four factors, but the first two are essential: A court may not grant injunctive relief, "regardless of what the equities seem to require," unless plaintiffs carry their burden of establishing both a likelihood of success and irreparable harm. *Adams*, 204 F.3d at 484; *accord Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990) (placing particular weight on the probability of irreparable harm and the likelihood of success on the merits, stating: "[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir.1982)); *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir.1987); *Freixenet, S.A. v.*

5

*Admiral Wine & Liquor Co.*, 731 F.2d 148, 151 (3d Cir.1984); *Am. Ex.*, 669 F.3d at 366, 374.

Preliminary injunctive relief is "an extraordinary remedy" and should be granted only in limited circumstances. *Am. Tele. & Tele. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994).

### B. The Religious Land Use and Institutionalized Persons Act

Jackmon alleges that the Department has violated his rights under RLUIPA. RLUIPA prevents the government from placing a "substantial burden" on a prisoner's religious exercise. RLUIPA provides that

> (a) No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person[](1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.

The Supreme Court in *Holt v. Hobbs* explained that "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" 135 S. Ct. 853, 862 (2015) (quoting 42 U.S.C. § 2000cc-5(7)(A)). RLUIPA provides "'greater protection' for religious liberty than is provided by the First Amendment." *Payne v. Doe*, 636 F. App'x 120, 124 (3d Cir. 2016) (citing *Hobbs*, 135 S. Ct. at 863).

In assessing whether a prison's policy has substantially burdened the practice of the inmate's religion, "we cannot 'inquir[e] into whether a particular belief or practice is 'central' to a prisoner's religion,' *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005), or question the 'truth' of his assertion of what his sincerely held religious beliefs require, *Gillette v. United States*, 401 U.S. 437, 457 (1971).'" *Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017). If a plaintiff shows that a policy substantially burdens a sincerely held religious belief, the burden shifts to the defendant to show that

6

the policy or practice furthers a compelling government interest and is the least restrictive means of doing so. *Hobbs*, 135 S. Ct. at 863.

A plaintiff's burden on a motion for a TRO is a heavy one. Here, Jackmon has not met that burden. First, he has not shown that he is likely to prevail at trial, because he although he alleges that STG activities have been curtailed, he has not presented any legal authority or set of facts that demonstrates the impermissibility or incorrectness of the designation of STG as a threat group. A plaintiff cannot prevail without such a showing. *See Winter*, 555 U.S. at 20; *Hoxworth*, 903 F.2d at 197. Because Jackmon has not demonstrated his likelihood of success on the merits, the first TRO factor thus favors the Department. I do not mean to imply that a suitable factual record could not be developed—but it has not been developed, and discovery is ongoing.

Second, Jackmon has not shown irreparable harm. According to Jackmon's complaint, he is a follower of the Nation, and the Department has enacted a zero-tolerance policy that prohibits all Nation literature, activities, and holy day observances that are compelled by the religion. (DE 1-1 at 3–5; *see also* DE 6 at 10). Nation adherents may not associate with any other Nation members and may not possess any symbols, drawings, photographs, or texts that refer to the Nation's beliefs. (*Id.* at 9–10). Prisoners who violate this policy are subject to significant disciplinary punishments or may face criminal prosecution. (*Id.*). Based on these facts, this Court is satisfied that Jackmon is harmed by his inability to exercise his sincerely held religious beliefs. However, Jackmon has been incarcerated in New Jersey since 1993, and the Nation has been designated an STG since 1998. (DE 27-2 ¶ 12). Jackmon was last charged with possessing contraband related to an STG in 2002. (DE 27-2 at 14). In other words, Jackmon has lived under the current Department rules for fifteen years, and therefore the harm he alleges is neither imminent nor irreparable. Nor has Jackmon acted with the sort of vigilance or diligence that will be rewarded by a court of equity. This second factor also favors the Department.

Neither party has addressed whether where the balance of the equities tips and whether an injunction is in the public interest. However, because the first two factors, which are the most important, *see Adams*, 204 F.3d at 484, favor the Department's position, the record is sufficient to establish that Jackmon has not met the burden required for injunctive relief at this early stage.

### III. CONCLUSION

I have found that the complaint states a claim and permitted this action to go forward. What is missing here is any developed factual record, or any showing of an emergent situation requiring the extraordinary remedy of a temporary restraining order. For the foregoing reasons, Jackmon's motion for a temporary restraining order or preliminary injunction is **DENIED**.

A separate order will issue.

Dated: November 6, 2019

Hon. Kevin McNulty
**United States District Judge**