UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MORRIS JACKMON,

    Plaintiff,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, *et al.*,

    Defendants.

Civ. No. 18-149 (KM) (SCM)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.**

## I.    INTRODUCTION

Plaintiff, Morris Jackson, is state prisoner incarcerated at East Jersey State Prison in Rahway, NJ. He is proceeding pro with an amended civil rights complaint ("Am. Cplt.", DE 28),[1] alleging violations under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Presently before the Court is Defendants' Motion to Dismiss the amended complaint. (DE 55.) For the following reasons, the motion will be denied.

## II.    BACKGROUND

### A.    Factual Background

The allegations contained in the amended complaint are presumed true for the purposes of this motion to dismiss. *See New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Plaintiff is a member of The Nation of Gods and Earths ("NOGE"). (DE 28, Am. Cplt. ¶ 8.) As a member of NOGE, Plaintiff states that he is required to teach others "about the knowledge

---

[1] The motion to amend was granted (DE 34) and the proposed amended complaint (DE 28) was deemed filed by subsequent order (DE 49).

of who God is," study and read certain materials and periodicals, observe holy days and "Honor Days," conduct "Civilization Classes," and gather monthly with other members. (*Id.* ¶ 15.) However, Plaintiff states that the New Jersey Department of Corrections ("NJDOC") has classified NOGE as a "Security Threat Group" or "STG". (*Id.* ¶¶ 15–16.) As such, Plaintiff cannot possess NOGE literature or paraphernalia, use NOGE hand-signs or signals, participate in NOGE meetings or gatherings, send or receive NOGE related correspondence, or recruit others to join NOGE. (*Id.* ¶ 16.) The NJDOC has a "Zero Tolerance" policy for any prohibited behavior or conduct and an inmate incurs disciplinary action for "every instance of an inmate's involvement in an activity related to [an STG]." (*Id.*) Plaintiff asserts that this policy has imposed a substantial burden on ability to "love and honor God as a sincere adherent" of NOGE. (*Id.* ¶ 9.)

Plaintiff's amended complaint adds four individual defendants: Patrick Nogan, Cindy Sweeney, Sergeant Mountcastle-Thomas, and S.C.O. Pikunich. (*Id.* ¶ 13.) Plaintiff alleges that Defendant Nogan, as Administrator of East Jersey State Prison, and Defendant Sweeney, as Associate Administrator of East Jersey State Prison, have "breached" their responsibility to safeguard Plaintiff's rights by "failing to intervene" and permit Plaintiff to practice his religion. (*Id.*)[2] Plaintiff alleges that Defendants Mountcastle-Thomas and Pikunich, who are responsible for the prison mailroom, have previously confiscated his NOGE reading materials. (*Id.* ¶ 14.)

In October 2017, Plaintiff filed the original complaint in state court against the NJDOC. (DE 1-1.) The case was subsequently removed to federal court. (DE 1.) In December 2018, Plaintiff filed an amended complaint in which he named Defendants Nogan, Sweeney, Mountcastle-Thomas, and Pikunich. (DE 28.) Plaintiff's demand for relief requests that

---

[2] Plaintiff also alleges Defendant Sweeney terminated Plaintiff's job as an institutional paralegal and reassigned him to Building Sanitation without cause. (*Id.*) However, Plaintiff does not indicate whether this action was related to his membership in NOGE. (*See generally id.*)

Defendants remove NOGE's classification as a security threat group. (*Id.* at 18.) Elsewhere in his amended complaint, Plaintiff states that he is suing each of the defendants in their individual capacities for damages and in their official capacities for declaratory and injunctive relief. (*Id.* ¶¶ 13–14.)

In November 2019, Defendants filed this motion to dismiss. (DE 55.) Plaintiff filed papers in opposition (DE 58-2), and Defendants filed a reply (DE 58).[3] The matter is now fully briefed.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See New Jersey Carpenters & the Trustees Thereof*, 760 F.3d at 302; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his "entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level,

---

[3]    Plaintiff's opposition was not uploaded to the Court's docket. However, Respondents uploaded a copy as an attached exhibit to their reply. (DE 58-2.) The Court appreciates the courtesy.

such that it is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

The facial plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Id.* at 678.

## IV.   ANALYSIS

### A.   Parties

The motion to dismiss argues that the amended complaint must be dismissed because the NJDOC, a necessary party for injunctive relief, is not named in the amended complaint. Actually, this is far from clear. NJDOC was the sole defendant named in the original complaint. The "Defendants" section of the amended complaint, it is true, lists and describes the four individual defendants— Patrick Nogan, Cindy Sweeney, Sergeant Mountcastle-Thomas, and S.C.O. Pikunich—but not NJDOC. The caption of the amended complaint, however, continues to list NJDOC as the sole defendant. The body of the amended complaint's "First Cause of Action," moreover, continues to identify the plaintiff's grievance as "[t]he [NJ] D.O.C.'s designation of the Nation as an STG and blanket ban on Nation literature and activities . . . ." (Am. Cplt. ¶ 13).

According to the plaintiff, the omission of NJDOC from the "Defendants" section was an oversight. (DE 58-2 at 6)  Given the NJDOC's central role in the allegations and continued presence in the caption, that is entirely plausible. Particularly given the plaintiff's *pro se* status, I accept that the amended complaint continues to name the NJDOC as a party.[4] The amended

---

[4]   Looking ahead, I note that the NJDOC's amenability to suit may become an issue to the extent this action is seen as one under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*,

4

complaint also adequately expresses the plaintiff's intent to add the four individuals as defendants. As to the four individual defendants, however, I will direct the assigned Magistrate Judge to ensure that any service issues have been resolved, preferably by consent.

The motion to dismiss on this ground will be denied.

### B..     Personal Involvement of the Four Individual Defendants

Plaintiff alleges that the NJDOC's ban on NOGE literature and activities prevents him from practicing his religion and places a substantial burden on his theological exercise. (DE 28 at 17.) The individual Defendants argue, however, that the amended complaint must be dismissed because Plaintiff has failed to allege that any of them had personal involvement in any violation of Plaintiff's rights. (DE 55-1 at 9.) They assert that, even accepting Plaintiff's allegations as true, the amended complaint does not set forth a claim against them upon which relief can be granted. (*Id.*)

Generally, a "defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). The concept of "personal involvement," which generally applies to 42 U.S.C. § 1983 claims, also appears to extend to RLUIPA claims. *See Hardwick v. Senato*, Civ. No. 15-326, 2019 WL 2231689, at *8 (D. Del. May 23, 2019) (dismissing RLUIPA claim against

---

491 U.S. 58, 71 (1989); *see also Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012). The well-established workaround for a § 1983 plaintiff seeking injunctive relief against a policy is to sue the official responsible for enforcing it in his or her official capacity. *See Ex Parte Young,* 209 U.S. 123 (1908). As for the RLUIPA clam, Defendants do not cite to, and the Court is unaware of, any case law which requires that the NJDOC be named as a party. Numerous prison-related RLUIPA cases, albeit without addressing the issue, have proceeded against the relevant officials without naming the department of corrections as a party. *See, e.g., Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111 (3d Cir. 2017); *Payne v. Doe*, 636 F. App'x 120 (3d Cir. 2016); *Sharp v. Johnson*, 669 F.3d 144 (3d Cir. 2012); *Washington v. Klem*, 497 F.3d 272 (3d Cir. 2007).

defendants who were not personally involved in the alleged violation); *Parson v. Pierce*, Civ. No. 15-325, 2019 WL 1004298, at *8 (D. Del. Feb. 28, 2019) ("The personal involvement requirement has been extended to RLUIPA claims."); *Robinson v. Cameron*, Civ. No. 16-44, 2018 WL 4519301, at *5 (W.D. Pa. Aug. 9, 2018), *report and recommendation adopted*, Civ. No. 16-44J, 2018 WL 4518655 (W.D. Pa. Sept. 20, 2018) (granting summary judgment on RLUIPA claim for defendant who was found not to have sufficient personal involvement in the alleged wrongs); *Rashid v. Lanigan*, Civ. No. 17-2805, 2018 WL 3630130, at *6 (D.N.J. July 31, 2018) (applying personal involvement standard to defendants in RLUIPA claim); *Corley v. City of New York*, Civ. No. 14-3202, 2017 WL 4357662, at *17 (S.D.N.Y. Sept. 28, 2017) (stating that courts within the Second Circuit have held that personal involvement is "a necessary component" to a valid RLUIPA claim); *Pilgrim v. Artus*, Civ. No. 07-1001, 2010 WL 3724883, at *14 (N.D.N.Y. Mar. 18, 2010), *report and recommendation adopted*, Civ. No. 07-1001, 2010 WL 3724881 (N.D.N.Y. Sept. 17, 2010) ("RLUIPA protects inmates against *actions taken* by a governmental entity or person acting under color of state law; in other words, there must be some personal involvement on the part of an individual defendant or government agency in the alleged RLUIPA violation.").

Personal involvement may be established through "allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can also be shown through a supervisor's implementation or maintenance of a policy, practice, or custom that that inflicted the relevant harm on the plaintiff. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Thus an individual who has final policymaking authority may be liable if the plaintiff establishes a policy that is unconstitutional and that policy injures the plaintiff. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015) ("[T]o establish a claim

against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation."); *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

Here, reading Plaintiff's pro se complaint liberally, I find that Plaintiff has sufficiently alleged that the individual Defendants had personal involvement in the alleged wrongs. As to Defendants Nogan and Sweeney, Plaintiff has alleged that, as administrators of the prison, they continued to maintain a policy which placed a "blanket ban" on all NOGE activity. Plaintiff alleges that this policy prevented him from observing the core tenets of his religion and imposed a substantial burden on his religious exercise, in violation of his rights under the First and Fourteenth Amendment, as well as the RLUIPA. As to Defendants Mountcastle-Thomas and Pikunich, Plaintiff has alleged their personal involvement through their confiscation of Plaintiff's NOGE reading materials. Plaintiff states that both Defendants Mountcastle-Thomas and Pikunich seized books which Plaintiff had ordered to further his religious teachings. Accordingly, Defendants' motion to be dismiss will be denied on this ground.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss (DE 55) will be denied. An appropriate order accompanies this opinion.

DATED: June 29, 2020

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge