## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MORRIS JACKMON,<br><br>                Plaintiff,<br><br>    v.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>                Defendants. | Civil Action No. 18-149 (JXN)(ESK)<br><br>**OPINION** |

**NEALS**, District Judge

### I.    INTRODUCTION

Plaintiff Morris Jackmon ("Plaintiff") is a state prisoner currently incarcerated at East Jersey State Prison in Rahway, New Jersey. Plaintiff is proceeding *pro se* with an amended complaint for civil rights violations under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Person Act of 2000 ("RLUIPA"). (ECF No. 28.) Presently before the Court is the motion for summary judgment filed jointly on behalf of Defendants Sergeant Mountcastle-Thomas, New Jersey Department of Corrections, Patrick Nogan, S.C.O. Pikunich, and Cindy Sweeny (collectively "Defendants") (ECF No. 105), Plaintiff's response (ECF No. 109), and Defendants' reply (ECF No. 120). Also before the Court are the parties' supplemental submissions addressing whether Plaintiff properly exhausted his claim under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF Nos. 121, 122, 123, & 124.) Having considered the parties' submissions in support of and opposition to the pending motion, the Court decides the motion

without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons below, Defendants' motion for summary judgment is DENIED.

## II.  FACTUAL AND PROCEDURAL HISTORY

The United States District Court has original or supplemental jurisdiction over all claims in this action, pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367(a).

Plaintiff filed his original complaint in Middlesex County Superior Court in October 2017. Defendant New Jersey Department of Corrections removed the case to this Court in January 2018. (*See* ECF No. 1.) The matter was originally assigned to the Honorable Kevin McNulty, U.S.D.J.[1] In December 2018, Plaintiff filed an Amended Complaint. (ECF No. 28.) In November 2019, Defendants filed a motion to dismiss (ECF No. 55), which Judge McNulty denied. (ECF No. 61). The facts giving rise to Plaintiff's Amended Complaint were previously stated by Judge McNulty in his Opinion denying Defendants' motion to dismiss as follows:

> Plaintiff is a member of The Nation of Gods and Earths ("NOGE"). ([ECF No.] 28 at 8.) As a member of NOGE, Plaintiff states that he is required to teach others "about the knowledge of who God is," study and read certain materials and periodicals, observe holy days and "Honor Days," conduct "Civilization Classes," and gather monthly with other members. (*Id.* at 15.) However, Plaintiff states that the New Jersey Department of Corrections ("NJDOC") has classified NOGE as a "Security Threat Group" or "STG". (*Id.* at 15–16.) As such, Plaintiff cannot possess NOGE literature or paraphernalia, use NOGE hand-signs or signals, participate in NOGE meetings or gatherings, send, or receive NOGE related correspondence, or recruit others to join NOGE. (*Id.* at 16.) The NJDOC has a "Zero Tolerance" policy for any prohibited behavior or conduct and an inmate incurs disciplinary action for "every instance of an inmate's involvement in an activity related to [an STG]." (*Id.*) Plaintiff asserts that this policy has imposed a substantial burden on ability to "love and honor God as a sincere adherent" of NOGE. (*Id.* at 9.)
>
> Plaintiff's amended complaint adds four individual defendants: Patrick Nogan, Cindy Sweeney, Sergeant Mountcastle-Thomas, and S.C.O. Pikunich. (*Id.* at 13-14.) Plaintiff alleges that Defendant Nogan, as Administrator of East Jersey State Prison, and Defendant Sweeney, as Associate Administrator of East Jersey State Prison, have "breached" their responsibility to safeguard Plaintiff's rights by "failing to intervene" and permit Plaintiff to practice his religion. (*Id.* at 13.)

---

[1] This matter was reassigned to the undersigned on June 28, 2021. (ECF No. 93.)

> Plaintiff alleges that Defendants Mountcastle-Thomas and Pikunich, who are responsible for the prison mailroom, have previously confiscated his NOGE reading materials. (*Id.* at 14.)

(ECF No. 61 at 1-2.) Plaintiff seeks monetary and injunctive relief against Defendants in their individual and official capacities. (ECF No. 28 at 13-15.)

On August 27, 2021, Defendants filed the instant motion for summary judgment. (ECF No. 105.) Defendants raise three arguments in their motion. First, Defendants argue that Plaintiff failed to exhaust his administrative remedies. Second, Defendants assert that they lack sufficient personal involvement, personal capacity claims are not subject to suit under RLUIPA and are entitled to qualified immunity. Finally, Defendants argue that NOGE is not a religion. (*See id.*)

This Court issued a notice pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), informing the parties that it intended to resolve any factual disputes regarding Defendants' affirmative defense of failure to exhaust administrative remedies. The parties submitted supplemental briefing addressing whether Plaintiff properly exhausted his claims under the PLRA. (*See* ECF Nos. 121, 122, 123, & 124.)

### III.  LEGAL STANDARD

A court should grant summary judgment if the evidence in the record, viewed with all reasonable inferences in favor of the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989). An issue is "genuine" only if a reasonable jury could possibly find in the non-movant's favor on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is "material" only if it influences the outcome under the applicable law. *Id.* at 248.

The moving party bears the initial burden of informing the district court of the basis for its motion and demonstrating either (1) that there is no genuine issue of fact and that as a matter of law, the moving party must prevail, or (2) that the nonmoving party has not shown facts relating to an essential element of the issue for which he bears the burden. *Celotex*, 477 U.S. at 323, 331. Once either showing is made, the burden shifts to the nonmoving party, who must demonstrate facts which support each element for which he bears the burden and establish the existence of genuine issues of material fact. *Id.* To satisfy this burden, the non-moving party "may not rest upon the mere allegations or denials of his pleading," Fed. R. Civ. P. 56(e), and he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993). The non-moving party must go beyond the pleadings and point to specific factual evidence showing there is a genuine material issue for trial. *Celotex*, 477 U.S. at 323–24. This is a rigorous burden for the non-movant: he must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatte v. N.J. State Police*, 71 F. 3d 480, 484 (3d Cir. 1995). Speculation and conjecture will not suffice. *See Jackson v. Danberd*, 594 F.3d 210, 227 (3d. Cir. 2010).

## IV.  ANALYSIS

### A. Exhaustion of Administrative Remedies

Defendants contend that summary judgment is appropriate because Plaintiff has failed to exhaust his administrative remedies, (ECF No. 105 at 9-14.), which Plaintiff disputes.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

4

remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *Ball v. Famiglio*, 726 F.3d 448, 456 (3d Cir. 2013), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross*, 136 S.Ct. at 1856 (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2007)). This includes constitutional claims, *Woodford*, 548 U.S. at 91 n.2, and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion must be proper, meaning "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). "A prisoner must exhaust these remedies 'in the literal sense[;]' no further avenues in the prison's grievance process should be available." *Smith v. Lagana*, 574 F. App'x 130, 131 (3d Cir. 2014) (quoting *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004)). A district court may decide whether a plaintiff exhausted his administrative remedies without a jury even if there are disputed facts after providing notice to the parties and an opportunity to submit further evidence. *Paladino*, 885 F.3d at 211; *Small v. Camden Cty.*, 728 F.3d 265, 270 (3d Cir. 2013).

Although exhaustion is mandatory under the PLRA, the statute also contains "a textual exception" to mandatory exhaustion. *See Ross*, 136 S.Ct. at 1858. "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *See id.* In *Ross v. Blake*, the Supreme Court noted "three kinds of circumstances in which an administrative remedy,

although officially on the books, is not capable of use to obtain relief." *See id.* at 1859. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859 (citing *Booth v. Churner*, 532 U.S. 731, 736 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 1850. "And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *See id.* In addition, the Third Circuit has held that the failure to respond in accordance with the prison's procedural rules to a properly filed grievance renders administrative remedies unavailable. *See Robinson v. Superintendent Rockview*, SCI, 831 F.3d 148, 154 (3d Cir. 2016).

As the Court of Appeals for the Third Circuit has explained, "PLRA exhaustion turns on the remedies and grievance procedures that the particular prison has available." *Rinaldi v. United States*, 904 F.3d 257, 272 (3d. Cir. 2018). Within the New Jersey Department of Corrections ("NJDOC"), "[t]he comprehensive Inmate Remedy System includes an 'Inmate Inquiry Form,' and/or 'Inmate Grievance Form,' and an 'Administrative Appeal,' which must be utilized and fully exhausted prior to an inmate filing any legal action regarding information requests, issues, concerns, and/or complaints." *See Concepcion v. Morton*, 306 F.3d 1347, 1355-55 (3d Cir. 2002) (citing N.J.A.C. 10A:1-4.4).

"Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." *Small*, 728 F.3d at 268. Once a defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate

6

to show that such remedies were unavailable to him. *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018).

Here, Defendants argue that "the record does not reflect any electronic inquires regarding this matter submitted by Plaintiff prior to filing suit." (ECF No.105-3, Defendants' Statement of Material Facts ("DSOMF") at ¶ 14(a).) Plaintiff argues he did grieve, and that Defendants made "administrative remedies unavailable by intentionally failing to answer Plaintiff's January 7, 2017 Request for Religious Services Form, Plaintiff's February 8, 2017 paper Inquiry, and Plaintiff's February 27, 2017 paper grievance." (ECF No. 109 at 11.)

In support of their argument, Defendants provide Plaintiff's August 2015 through July 2017 electronic inquiry and grievance forms, which do not contain grievances regarding Plaintiff's RLUIPA claim. (*See* ECF No. 105-14.) Defendants contend that Plaintiff admitted that he did not exhaust his remedies in the following interrogatory answer:

> 16. Please state whether or not you submitted any "Inmate Remedy System Forms," "Inmate Inquiry Forms," or any other type of inmate grievance form and/or any submissions to the J-Pay system regarding the allegations made in your complaint prior to filing suit.
>
> ANSWER: As the STG policy is presently applied any submission of "Inmate Remedy," "Inmate Inquiry" or any other type of written grievance on jpay or otherwise is self-admission to participating in activity(ies) that relate directly or indirectly to the goals of a STG which could expose plaintiff to immediate and severe institutional sanctions. However, any future complaints, remedies, or related grievances will be forwarded to the Court.

(ECF No. 105-17 at 5, 11.)

Defendants acknowledge, however, that on September 28, 2018, Plaintiff did submit the following Inquiry Form, inquiring into a request for religious services, which Plaintiff claimed went unanswered:

> Inmate Inquiry (Ref# EJSP18013231) stating that:

7

> **At or around [August] 2017**, [Plaintiff] received and completed a single page . . . Declaration of Faith/Request for Religious [Services] [which he] completed . . . & submitted for outgoing mail. This **[request] went without reply**.
>
> **On Monday [September] 10, 2018**, [he received] a new two-page . . . [form] from the chaplaincy [] instructing [him] to resubmit the acquired form for processing and filing. . . . **[O]n [September 20, 2018]**, [he] was notified . . . that [his second request] for "Declaration of Faith for Religious [Services] had been [received] . . . . However, [he] submitted the "Declaration" in anticipation of the God Centered Culture of the [NGE] being added to the approved [services] currently being offered by the [Department's] Office of Chaplaincy [Services]. The theological belief system of the NGE via GCC has yet to be added as other similarly situated belief systems have been.

(ECF No. 105-15 at 3) (emphasis added). Department staff responded to this inquiry on October 1, 2018, indicating that Plaintiff's request "will be referred to administration and the Religious Issues committee to make a decision on the matter." (*Id.*)

In response, Plaintiff claims that on January 7, 2017, prior to filing suit, he submitted a request for NOGE religious services to the East Jersey State Prison's ("EJSP") Administration and Office of the Chaplaincy, which was ignored by Defendants Nogan and Sweeney. (ECF No. 109-2, Plaintiff's Declaration ¶ 8.) Plaintiff alleges that on February 8, 2017, he submitted a paper Inquiry requesting NOGE religious services, which was ignored. (*Id.* ¶ 9.) Plaintiff claims that on February 27, 2017, he submitted a paper grievance reminding Administration of his inquiry and again did not receive a response. (*Id.* ¶ 10.) Plaintiff provides copies of these paper documents. (*See id.*, Ex. B.) Plaintiff also provides the Court with a copy of his January 14, 2018 grievance, in which Plaintiff grieves the confiscation of two religious books. (ECF No. 109-2 at 22.) Plaintiff also explicitly testified during his deposition that in early 2017 he filed two paper inquiry forms regarding his religious declaration and never received a response. (ECF No. 105-13 at 72:22-73:4, 74:19-24, 81:2-7, 82:2-3.)

8

Defendants contend that they have no record of the paper grievance forms Plaintiff has submitted to the Court. In support of their contention that these paper forms do not exist, Defendants submit the certification of Karen Parker-Foreman, an Executive Assistant 3 assigned to EJSP, who has served as EJSP's Coordinator of Inmate Remedy System since 2014. (*See* ECF No. 121-4, Parker-Foreman Cert.) The certification indicates that Parker-Foreman searched EJSP's file from one year before and one year after February 2017 and was unable to "locate either the paper Inmate Inquiry [] or paper Inmate Grievance [] that Plaintiff submitted to this Court." (*Id.* ¶5.), Defendants submit, however, that copies of a paper grievance form "will not contain any indicia that the form was in-fact submitted by the inmate or received by the facility." (ECF No. 121at 4.) Defendants also acknowledge that EJSP's "inability to locate these paper forms is not a direct refutation of Plaintiff's contentions." (*Id.* at 6.)

Defendants have failed to meet their burden of showing that no genuine issue of material fact exists. *See Celotex*, 477 U.S. at 331. Plaintiff explicitly testified that he filed paper inquiry and grievance forms prior to filing his original complaint. Plaintiff's sworn deposition testimony is sufficient to establish a genuine issue of material fact. *Paladino*, 885 F.3d at 209 (finding sworn deposition testimony setting forth specific facts that contradict Defendants' evidence can establish a genuine issue of material fact.) Plaintiff has also supplied the Court with copies of the paper forms he claims to have submitted. Defendants acknowledge that they are unable to affirmatively show that Plaintiff did not submit these forms. The Court must view the evidence "with all reasonable inferences in favor of the nonmoving party[.]" Fed. R. Civ. P. 56; *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989).

For these reasons, Defendants' motion for summary judgment is denied without prejudice as to the issue of exhaustion of administrative remedies.

### B. Individual Capacity

Defendants next argue that Plaintiff's RLUIPA claim against Defendants in their personal capacity must be dismissed because personal capacity claims are not viable under RLUIPA. (ECF No. 105-4 at 16-17.)

As noted above, Plaintiff indicates that he sues Defendants in their individual and official capacities for monetary and injunctive relief. (*See* ECF No. 28 at 13-15.) RLUIPA does not permit actions against state officials in their individual capacity. *Sharp v. Johnson*, 669 F.3d 144, 153-55 (3d Cir. 2012). RLUIPA does, however, permit plaintiffs to "obtain appropriate relief against a government." *Id.* at 153 (citing 42 U.S.C. § 2000cc-2). The statute defines "Government" to include state entities, their agencies, and any other person acting under color of State law. *See id.* (citing 42 U.S.C. § 2000cc-5(4)(A)). Thus, RLUIPA applies to state employees acting in their official capacities but not their individual capacities. *See id.* Moreover, a plaintiff may not sue a state or state official for monetary damages under RLUIPA. *See Sossamon v. Texas*, 563 U.S. 277, 288, 293 (2011) (holding that States, by accepting federal funds, do not consent to waive their sovereign immunity to suits for money damages under RLUIPA). Accordingly, Plaintiff's RLUIPA claims against the Defendants in their individual capacities and Plaintiff's RLUIPA claims against the Defendants in their official capacities to the extent it seeks monetary damages are hereby dismissed with prejudice.

### C. Official Capacity

Defendants next argue that Plaintiff's RLUIPA claim against Defendants Nogan and Sweeney, in their official capacities, should be dismissed because they lack any personal

involvement with regard to Plaintiff's allegations. (ECF No. 105-4 at 15-16.) Defendants argue "discovery has not revealed any evidence to support any allegation that these two individual administrative Defendants enforced the STG Policy in any way or were otherwise personally involved in the constitutional violation alleged by Plaintiff." (*Id.* at 16.)

Plaintiff asserts that Defendants Nogan and Sweeney are personally involved by their implementation of N.J.A.C. §10A:3-11.2 and N.J.A.C. § 10A:3-11.3 against Plaintiff's religious beliefs in an unconstitutional manner. (ECF No. 109 at 14.) Plaintiff claims that these Defendants, as administrators, maintained these regulations "placing a blanket ban on all NOGE activity which prevented the Plaintiff from observing the core tenets of his chosen divine path to God and imposed a substantial burden on his theological exercise." (*Id.*)

As noted above, Plaintiff has an RLUIPA claim against Defendants Nogan and Sweeney in their official capacity for injunctive relief. In official capacity suits brought under § 1983, "[c]laims for prospective injunctive relief are permissible provided the official against whom the relief is sought has 'a direct connection to, or responsibility for, the alleged illegal action.'" *Hussmann v. Knauer*, No. 4–2776, 2005 WL 435231, at *6 (E.D.Pa. Feb. 23, 2005) (quoting *Davidson v. Scully*, 148 F.Supp.2d 249, 254 (S.D.N.Y.2001)); *see also Davidson*, 148 F.Supp.2d. at 254 (applying same rule where plaintiff seeks declaratory relief); *see also Victorious v. Lanigan*, No. 15-6949, 2016 WL 2981759, at *6, n.8 (D.N.J. May 23, 2016)

The record indicates that these Defendants are the Administrator and Associate Administrator of EJSP, which maintains the blanket policy against NOGE activity. As these Defendants have connection to the policy in place regarding NOGE and appear, as administrators, to be the parties able to provide relief, Defendants' motion for summary judgment as it pertains to

the RLUIPA official capacity claims for injunctive relief against Defendants Nogan and Sweeney is denied.

### D. Failure to State a Claim

Finally, Defendants argue that Plaintiff has failed to state a valid RLUIPA claim because the record demonstrates that NOGE is not a religion. (ECF No. 105-4 at 21-24.)

"Congress passed RLUIPA to grant heightened protection to prisoners from burdens imposed by the government." *Washington v. Klem*, 497 F.3d 272, 276 (3d Cir. 2007). RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrict means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). In 2015, in *Holt v. Hobbs*, the Supreme Court clarified that RLUIPA "provide[s] very broad protection for religious liberty." 574 U.S. 352, 356 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)). RLUIPA mandates that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability," unless the government can satisfy strict scrutiny. 42 U.S.C. § 2000cc-1(a). Thus, to state a claim under RLUIPA, a plaintiff must allege (1) an unreasonable and substantial burden on a (2) sincerely held (3) religious belief.

The Supreme Court has held that a religion, for purposes of the First Amendment, is distinct from a "way of life," even if that way of life is inspired by philosophical beliefs or other secular concerns. *See Wisconsin v. Yoder*, 406 U.S. 205, 215–16, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). As the Supreme Court has recognized, there are many religions in this country that "do not teach what

12

would generally be considered a belief in the existence of God," including "Buddhism, Taoism, Ethical Culture, Secular Humanism and others." *Torcaso v. Watkins*, 367 U.S. 488, 495 n.11 (1961). RLUIPA "define[s] 'religious exercise' capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Holt*, 573 U.S. at 358 (quoting 42 U.S.C. § 2000cc–5(7)(A))

Defendants argue that NOGE is not a "religion" for RLUIPA purposes. Defendants state that Plaintiff describes the [NOGE] as a "culture," or "God-centered culture," which is "taught walking and talking" or through experience. (DSOMF ¶ 19, citing ECF No. 105-13, Plaintiff's Deposition Transcript ("Pl. Depo.") at 14:15-17, 43:8-9.) Defendants note that Plaintiff's original complaint used the word "religion" and "religious beliefs," but the Amended Complaint replaced that language with "God centered culture," "God centered cultural tenant" or "teaching," and "theological exercise." (*Id.* ¶19(a).) Defendants point to Plaintiff's deposition testimony that NOGE adherents would not agree that NOGE is a religion. (DSOMF ¶ 18, citing Pl. Depo. at 49:11-16.)

Plaintiff counters that the record reflects that "Plaintiff attested that the NOGE is a religion just like Christianity, Islam and Judaism." (ECF No. 114-1, Plaintiff's Statement of Material Facts ("PSOMF") ¶ 19.) Plaintiff testified at his deposition that "Nations of Gods and Earths understand that [their] God-centered culture is a legitimate path to God." (Pl. Dept. at 9:1-3.) Plaintiff testified that they "believe in God . . . [and] are not atheists . . . it's just that [their] understanding of who God is is not based or predicated on what the western religions term as a mystery God." (*Id.* at 10:5-9.) Plaintiff testified to the following differences with other religions:

> Q. So with regard to the literature component, you've answered discovery and you referenced some of these writings in your filings to the Court, but if you could -- are there central foundational holy texts in the Nation?

13

> A. Yes.
>
> Q. And what are those?
>
> A. It's -- so I'll draw, you know, the similarities, so that you can see the similarities. So where Christians have the Holy Bible, they go to church and then they have concordances that actually help them understand the Bible or the Word of God better. With Muslims, they have the holy Qur'an. They attend mosque and then they have hadiths which actually help them understand the Prophet and Allah, the Word of Allah better.
>
> The same with the Jews, you know, they have the Torah and then they have, you know, the Talmud which actually helps them understand the Torah better. So in the Nation of Gods and Earths, similarly, we have 120 degrees which would be the supreme wisdom lessons. Then we have supreme mathematics and supreme alphabets which help us understand or adequately navigate the -- what we term the heavy gravitation of 120 degrees.
>
> Now, we have ciphers for that, so we attend ciphers. So the same as the traditional religions, like we have things that we hold dear, books, 120, lessons on supreme mathematics and supreme alphabets and we have ciphers that we utilize to teach each other how to live this God-centered culture better, so that's what we have.

(*Id.* at 42:1 to 43:10.) Plaintiff testified that the NOGE "abhors" the term religion because religion has promoted violence and crimes against humanity, so they reject the western tradition of what religion is. (*Id.* at 48:24 to 49:6) Plaintiff further testified that they have a "legitimate path to God and should be afforded the rights that any western religion is afforded." (*Id.* at 49:7-10.) Explaining that the NOGE belief system is sufficiently similar to religious beliefs, Plaintiff testified as follows:

> Q. Well, let me ask you this, when you're using that qualifier, the western sense of the word, what does that distinguish to you?
>
> A. Well, the western sense, because you have Buddhism, and Buddhism is an eastern religion. It's classified as a religion, but Buddhists, if you ask Buddhists, they will tell you that they're not a religion. Buddhism is not a religion. It is a pathway to God. That's how Buddhists describe themselves. They don't describe themselves as a religion.
>
> The reason why I say in the western sense of understanding what religion is is we say okay, we will -- we have a path to God. It is as divine as religious people consider their life way, their path to God. We say look, we're not atheists. What we

> are taught is that man is God and it has always been. That's not a modern manifestation. Like that is an ancient teaching.
>
> That was around long before Allah bore the Nations of Gods and Earths in 19[]4. That's been around since man has been in existence.

(*Id.* at 49:20 to 50:16.)

Here, the record demonstrates that while NOGE is against the word "religion" in the western sense, it still operates under a belief system centered around their belief in what God is. As noted above, the Supreme Court has recognized, many recognized religions "do not teach what would generally be considered a belief in the existence of God." *Torcaso*, 367 U.S. at 495 n.11. Plaintiff testified that his belief system is sufficiently similar to religious beliefs. Accordingly, the record reviewed with all reasonable inferences in Plaintiff's favor, supports Plaintiff's contention that NOGE is a "religion" for RLUIPA purposes. Consequently, Defendants' motion for summary judgment is denied as to this issue.[2]

## V. CONCLUSION

For the forgoing reasons, Defendants' motion for summary judgment (ECF No. 105) is **DENIED**. An appropriate Order accompanies this Opinion.

**Dated: September 12, 2022**

**JULIEN XAVIER NEALS**
**United States District Judge**

---

[2] Defendants argue that Plaintiff asserts a single action pursuant to RLUIPA. (DSOMF ¶ 10.) Plaintiff submits that he also raises a First Amendment claim in his Amended Complaint. (PSOMF ¶ 9.) The Amended Complaint alleges that "Defendants' refusal to allow Plaintiff his right to love and honor God from the God Centered Culture perspective violates Plaintiff's 1st Amendment Establishment Clause protections." (ECF No. 28 at 8.) As Defendants do not move for summary judgment on Plaintiff's First Amendment claim, the Court will not adress that claim.