## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MORRIS JACKMON,

                 Plaintiff,

     v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, *et al.*,

                 Defendants.

Civil Action No. 18-149 (JXN)(SDA)

**<u>OPINION</u>**

<u>**NEALS**</u>, District Judge

Before the Court is Defendants New Jersey Department of Corrections ("NJDOC"), Patrick Nogan ("Nogan"), Cindy Sweeney ("Sweeney"), Sergeant Mountcastle-Thomas ("Mountcastle-Thomas"), and S.C.O. Pikunich's ("Pikunich") (collectively "Defendants") amended motion for summary judgment (ECF Nos. 196, 197) and Plaintiff Morris Jackmon's ("Plaintiff") cross-motion for summary judgment (ECF No. 182) pursuant to Federal Rule of Civil Procedure 56. Plaintiff filed an opposition to Defendants' amended motion for summary judgment (ECF No. 204), to which Defendants replied (ECF No. 210). Defendants filed an opposition to Plaintiff's cross-motion for summary judgment (ECF Nos. 194, 195), and Plaintiff filed a reply (ECF No. 204). Having considered the parties' submissions in support of and opposition to the pending motions, the Court decides the motions without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED in part**, and Plaintiff's cross-motion for summary judgment is **DENIED**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a state prisoner currently incarcerated at East Jersey State Prison ("EJSP"). (Plaintiff's Statement of Undisputed Material Facts ("PSOMF") ¶ 29, ECF No. 182-2 at 13-18.)[1] Plaintiff has been an adherent of the Nations of Gods and Earths ("NOGE") since 1993. (*Id.* ¶ 30.)

The NOGE "(a/k/a the 'Five-Percent Nation' or simply 'Five Percenters') is an organization founded by Clarence Smith." (Defendants' Statement of Undisputed Material Facts ("DSOMF") ¶ 6, ECF No. 196-2.)[2] As a sincere adherent of the NOGE, Plaintiff is obligated to "teach others about the knowledge of who God is and to read, study, and memorize materials like 'Supreme Mathematics,' and to meet several time a month for 'Ciphers,' 'Civilization Classes,' and 'Universal Parliaments' to teach each other about their 'God-centered culture." (PSOMF ¶ 31.)

In 1994, the New Jersey State Police characterized the NOGE as "[p]robably the most predominate of all African-American street gangs in this state." (DSOMF ¶ 7.) "Only the Commissioner or Deputy Commissioner shall be authorized to designate a group of inmates as a security threat." (*Id.* ¶ 5.) On December 30, 1997, former Commissioner William H. Fauver designated the NOGE as a Security Threat Group ("STG") based on documentation prepared by the intelligence section of the Internal Affairs Unit. (*Id.* ¶ 12.) A STG is defined as "a group of

---

[1] For the sake of brevity, all citations to the parties Rule 56.1 statements incorporate the evidentiary citations contained therein. The Court sets forth only those material facts necessary to decide the motions. All facts are undisputed unless otherwise noted.

[2] Although Plaintiff filed an opposition to Defendants' amended motion for summary judgment, he failed to file a responsive statement of material facts in dispute. Rather, Plaintiff's opposition brief "relies upon the Statement of Material Facts in Support of Summary Judgment, previously filed as ECF No. 182." (ECF No. 204 at 11.) Defendants' amended motion for summary judgment includes a Statement of Undisputed Material Facts (ECF 196-2) that differs from their initial statement of undisputed material facts (ECF No. 178-1). The Court will consider Plaintiff's responsive statement of undisputed material facts to the extent it addresses material facts asserted by Defendants in the amended motion for summary judgment. Any of the material facts submitted by Defendants that are not addressed in Plaintiff's original responsive statement will be deemed admitted for the purposes of Defendants' amended motion in light of Plaintiff's failure to dispute their statement of material facts. *See* Fed. R. Civ. P. 56(e)(2); Local Civil Rule 56.1.

inmates possessing common characteristics, interests and goals which serve to distinguish the group or group members from other inmate groups or other inmates and which, as a discrete entity, poses a threat to the safety of the staff, other inmates, the community or causes damage to or destruction of property, or interrupts the safe, secure and orderly operation of the correctional facility(ies)." (*Id.* ¶ 10.) STG activities are defined as

> an activity(ies) or action(s) of an inmate that relate either directly or indirectly to the goals of a [STG]. These activities include, but are not limited to: 1. Possession of [STG] literature, such as correspondence, newsletters, publications, lessons, membership lists and manuals; 2. Possession of [STG] paraphernalia, such as beads, artwork, medallions and clothing articles; 3. Known [STG] hand-signs or signals as observed by staff; 4. Participation in [STG] related assaults, disturbances, meetings, gatherings, incidents or events; 5. Sending [STG] related correspondence; and 6. Recruiting other inmates to join a [STG].

(*Id.* ¶ 11.) The STG policy is a "Zero Tolerance" policy that punishes NOGE adherents from engaging in any "prohibited acts" that could in any way be associated with the NOGE, including merely engaging another adherent or possessing any NOGE materials (symbols, literature, garbs, etc.). (PSOMF ¶ 35.)

The 1997 NOGE STG designation was related to "Specific Violent Acts, Intended Action of Violence and Specific Illegal or Prohibited acts as documented in numerous Special Investigation Division ("SID") investigations, each involving known adherents of the NOGE." (DSOMF ¶ 13.) Defendants cite fifteen incidents between August 1990 and January 1998, of assaults, planned assaults, drug trafficking, prison disturbances, and prison fights involving NOGE members, which resulted in NOGE's STG designation. (*Id.* ¶¶ 14-28.)

Plaintiff does not dispute that the incidents occurred or that NOGE was designated as a STG in 1997. Rather, Plaintiff disputes the current relevance of these facts to current-day life. Plaintiff submits that the incidents are over two decades old and do not reflect the current behavior

of NOGE adherents. (*See* Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ("PRSOMF") ¶¶ 9, 11-22, ECF No. 182-2 at 1-13.)

Since the NJDOC designated NOGE as a STG in 1997, the NJDOC is unaware of any violent or disruptive behavior attributable to NOGE as a group. (DSOMF ¶ 31.) Since January 1998, the number of self-identified NOGE adherents within the NJDOC system has declined from just over 900 to just over 100 in March 2019. (*Id.* ¶ 32.)

Over the past 30 years of imprisonment, Plaintiff has not been cited for a violent infraction. (PSOMF ¶ 36.) Plaintiff has been punished for possessing NOGE-related materials and engaging in NOGE practices and has been charged with further STG activities. (*Id.* ¶¶ 38, 40.) Plaintiff was sanctioned with confiscation of the material, 15 days in the hole, 180 days of loss computation time, 180 days of administrative segregation, and designated a "core member" of a STG. (*Id.* ¶ 41.) Plaintiff has applied to the Office of Chaplaincy for NOGE recognition but was unsuccessful. (*Id.* ¶ 42.)

Plaintiff is permitted to fast individually but is not allowed to engage in a collective fast. (DSOMF ¶ 33.) Collective fasting is a significant aspect of NOGE. (PRSOMF ¶ 25.) Plaintiff is allowed to write letters to individuals about the Nation, but must use the individual's actual name. (DSOMF ¶ 34.) Plaintiff is allowed to engage in honor days, individually but not communally. (*Id.* ¶ 35.) However, other significant aspects of NOGE religious practice, such as congregation meetings, are prohibited. (PRSOMF ¶ 27.)

Plaintiff filed his original complaint in Middlesex County Superior Court in October 2017. Defendant NJDOC removed the case to this Court in January 2018. (*See* ECF No. 1.) The matter was originally assigned to the Honorable Kevin McNulty, United States District Judge (ret)

4

("Judge McNulty").[3] In December 2018, Plaintiff filed his Amended Complaint. (ECF No. 28.) The Amended Complaint alleges that Defendant Nogan, as Administrator of EJSP, and Defendant Sweeney, as Associate Administrator of EJSP, have "breached" their responsibility to safeguard Plaintiff's rights by "failing to intervene" and permit Plaintiff to practice his religion. (*Id.* at 13.) Plaintiff alleges that Defendants Mountcastle-Thomas and Pikunich, who are responsible for the prison mailroom, have previously confiscated his NOGE reading materials. (*Id.* at 14.)

In November 2019, Defendants filed a motion to dismiss (ECF No. 55), which Judge McNulty denied (ECF No. 61). In August 2021, Defendants filed their first motion for summary judgment. (ECF No. 105.) On September 12, 2022, the Court dismissed with prejudice Plaintiff's Religious Land Use and Institutionalized Person Act of 2000 ("RLUIPA") claims against Defendants in their individual capacities and Plaintiff's RLUIPA claims against Defendants in their official capacities to the extent Plaintiff sought monetary damages. (*See* ECF Nos. 125, 126.) The Court denied the remainder of the motion for summary judgment. (*Id.*)

In July 2024, Defendants filed a motion for partial summary judgment, seeking summary judgment on Plaintiff's First Amendment Free Exercise claim and claim for compensatory damages. (*See* ECF No. 178.) Plaintiff filed a cross-motion for summary judgment on the following claims: (1) First Amendment Free Exercise; (2) RLUIPA; (3) Fourteenth Amendment Equal Protection Clause; and (4) First Amendment Establishment Clause. (*See* ECF No. 182.) Defendants opposed Plaintiff's cross-motion for summary judgment. (ECF No. 184.)

On January 13, 2025, the Court issued a Memorandum and Order, finding that Defendants failed to oppose Plaintiff's motion for summary judgment on his RLUIPA claim. (ECF No. 186 at 2.) The Court also found that Plaintiff had adequately raised an Equal Protection Clause and an

---

[3] This matter was reassigned to the undersigned for all further proceedings on June 28, 2021. (ECF No. 93.)

Establishment Clause claims in his Amended Complaint. (*Id.*) The Court provided Defendants with an opportunity to file an amended motion for summary judgment addressing Plaintiff's Equal Protection Clause and Establishment Clause claims, as well as Plaintiff's request for summary judgment on his RLUIPA claim. (*See generally id.*)

On May 7, 2025, Defendants filed their amended motion for summary judgment. (ECF Nos. 196, 197.) Plaintiff filed an opposition (ECF No. 204), and Defendants replied in further support (ECF No. 210). Plaintiff's cross-motion for summary judgment was filed on July 26, 2024. (ECF No. 182.) Defendants filed an opposition (ECF Nos. 194, 195), and Plaintiff filed a reply (ECF No. 204). The motions are now ripe for resolution.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law identifies what facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (citation omitted).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter," but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. Nor will the Court "resolve factual disputes or make credibility determinations." *Rhodes v. Marix Servicing, LLC*,

302 F. Supp. 3d 656, 661 (D.N.J. 2018) (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)). Although the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 250. The Court must grant summary judgment if the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) (citation omitted).

## III.    <u>DISCUSSION</u>

### A.  **Defendants' Amended Motion for Summary Judgment**

In their amended motion for summary judgment, Defendants argue that they are entitled to summary judgment on Plaintiff's RLUIPA claim because the STG policy is the least restrictive means of furthering a compelling interest. (ECF No. 196-1 at 19-27.) Defendants argue that the individual defendants in their individual capacities are entitled to summary judgment on Plaintiff's Section 1983 claims because they are entitled to qualified immunity, and Plaintiff has not shown Defendants' personal involvement. (*Id.* at 31-47.) Finally, Defendants contend that the individual defendants in their official capacities are entitled to summary judgment on Plaintiff's demands for prospective injunctive relief because each lacks the requisite authority to provide relief. (*Id.* at 28-31.) The Court addresses each argument in turn.

1. **_RLUIPA_**

First, Defendants argue that Plaintiff's RLUIPA claim must be dismissed because the STG policy is the least restrictive means of furthering a compelling interest. (ECF No. 196-1 at 19-27.) The Court disagrees.

"Congress passed RLUIPA to grant heightened protection to prisoners from burdens imposed by the government." _Washington v. Klem_, 497 F.3d 272, 276 (3d Cir. 2007). The statute forbids the government from imposing "a substantial burden" on a prisoner's religious exercise unless the government "demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). A substantial burden under RLUIPA exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates, versus abandoning one of the precepts of his religion to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs. _Klem_, 497 F.3d at 280. Therefore, to establish a prima facie case of a RLUIPA violation, a prisoner must initially demonstrate that a substantial burden has been placed on his or her exercise of religious beliefs. _See Robinson v. Superintendent Houtzdale SCI_, 693 F. App'x. 111, 115 (3d Cir. 2017) ("The threshold question in any . . . RLUIPA case is whether the prison's challenged policy or practice has substantially burdened the practice of the inmate-plaintiff's religion.") (citing _Washington_, 497 F.3d at 277–78).

Where the prisoner meets his burden of showing that the prison's policy substantially burdened his exercise of religion, the burden shifts to the prison to show its policy "(1) [was] in furtherance of a compelling governmental interest; and (2) [was] the least restrictive means of

furthering that compelling governmental interest." *Payne v. Doe*, 636 F. App'x. 120, 125 (3d Cir. 2016) (quoting § 2000cc–1(a)).

A prisoner plaintiff's RLUIPA claim must be considered in light of the Supreme Court's decision in *Holt v. Hobbs*.[4] There, prison officials argued that the prison's grooming policy represented the least restrictive means of furthering a broadly formulated interest in prison safety and security, but the Supreme Court stated that RLUIPA "contemplates a 'more focused' inquiry and 'requires [prison officials] to demonstrate that the compelling interest test is satisfied through application of the challenged [policy]' 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Holt*, 574 U.S. at 363. In this case, the challenged policy is the enforcement of the NJDOC's classification of NOGE as a STG, resulting in Plaintiff's inability to possess NOGE literature or paraphernalia, use NOGE hand-signs or signals, participate in NOGE meetings or gatherings, send, or receive NOGE-related correspondence, or recruit others to join NOGE. (*See* ECF No. 28 at 16.)

First, Defendants argue that Plaintiff has failed to show that they have substantially burdened his religious exercise under RLUIPA. Defendants claim that Plaintiff "addresses only the dictates of the NOGE system of beliefs, and does not expound on what his personal beliefs require of him." (ECF No. 196-1 at 21.) However, Plaintiff testified about the many burdens imposed on his religious exercise. Specifically, Plaintiff testified that as an adherent of the NOGE, he is required to keep a physical copy of a "Book of Life," which consists of "120 degrees, supreme mathematics, supreme alphabets, and the [] histories." (ECF No. 178-4, Pl. Dep. at 45:16-22.) Plaintiff testified that although he is allowed to fast individually, he is supposed to do "communal fast where [they] would . . . go through the teachings and then break fast together," which is not

---

[4] 574 U.S. 352 (2015).

allowed. (*Id.* at 55:20 to 56:3.) Plaintiff testified that the communal fast is "important because . . . there's always an educational component where adherents, better knowers in that particular institutional is teaching before and after the fast is broken." (*Id.* at 57:17-23.) Plaintiff also testified that he is not permitted to speak "the language" of NOGE. (*Id.* at 60:18 to 61:16.) For summary judgment, Plaintiff has shown that the STG restrictions on NOGE place a substantial burden on Plaintiff's religious exercise under RLUIPA.

Defendants next argue that the STG classification and restrictions on the NOGE followers are (1) in furtherance of a compelling governmental interest, and (2) are the least restrictive means of furthering that interest. (ECF No. 196-1 at 22-27.) Defendants argue that NJDOC has a compelling interest in maintaining safety and security within the prison. (*Id.* at 22.) Defendants submit that in 1997, former Commissioner of the NJDOC William H. Fauver designated NOGE as a STG, following an investigation conducted by an NJDOC investigator, Ronald Holvey. (*Id.*) Investigator Holvey's report ("the Holvey Report") provided evidence of "large scale coordinated violent behavior perpetrated by NOGE adherents between 1990 and 1997." (*Id.* at 22-23, citing DSOMF ¶¶ 14-28.) The Holvey Report cited to many incidents that were linked to NOGE members throughout New Jersey State Prison, EJSP, Northern State Prison, Southern State Correctional Facility, Mountainview Youth Correctional Facility, Albert C. Wagner Youth Correctional Facility, and Riverfront State Prison. (*Id.*)

To satisfy RLUIPA's compelling interest prong, the government may not rest on only "broadly formulated [institutional] interests," *Ramirez v. Collier*, 595 U.S. 411, 427 (2022) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014)); it instead must identify its policy objectives with respect to "the particular claimant whose sincere exercise of religion is being substantially burdened," *Holt*, 574 U.S. at 363 (quoting *Burwell*, 573 U.S. at 726). Plaintiff

submits that the Holvey Report and the incidents cited therein are outdated, as they are from nearly three decades ago. (ECF No. 204 at 16-19.) Plaintiff argues that based on the outdated nature of the Holvey Report, it does not support the Defendants' position that there is a current compelling governmental interest in classifying NOGE as a STG. (*Id.*) Defendants admit that since the NJDOC designated NOGE as a STG in 1997, the NJDOC is unaware of any violent or disruptive behavior linked to the actions of NOGE as a group. (DSOMF ¶ 31.) Additionally, since January 1998, the number of self-identified NOGE adherents within the NJDOC system has declined from just over 900, to just over 100 in March 2019. (*Id.* ¶ 32.)

Defendants do not provide any current evidence. Rather, they argue that because the restrictions worked, there is now an absence of current evidence to support the need for the restrictions. (ECF No. 198-1 at 24-25; ECF No. 210 at 8.) Defendants admit that there have been no recorded incidents of violent behavior by a NOGE member in almost 30 years, and that the number of members across all NJDOC facilities has been reduced to 100 inmates. (DSOMF ¶¶ 31-32.) Moreover, Defendants have not shown that Plaintiff himself is a danger to EJSP. *Holt*, 574 U.S. at 363 (internal quotations omitted) ("the compelling interest test is satisfied through application of the challenged law to the person—the particular claimant whose sincere exercise of religion is being substantially burdened.") In fact, Plaintiff submits that in over thirty years of imprisonment, Plaintiff has not been cited for a violent infraction. (PSOMF ¶ 36.) There is a genuine dispute of material fact on whether the government's interest is compelling. Therefore, Defendants' amended motion for summary judgment is denied as to Plaintiff's RLUIPA claim.

## 2. *Qualified Immunity*

As explained at length above, Plaintiff's First Amendment Free Exercise Clause and Establishment Clause claims, and Fourteenth Amendment Equal Protection Clause claim arise out

of the restrictions placed on Plaintiff based on the STG classification of NOGE. In his Amended Complaint, Plaintiff argues that NJDOC's designation of NOGE as a STG and the resulting blanket ban on literature and activities impose a burden on Plaintiff's religious practice in violation of the First and Fourteenth Amendments. (*See* ECF No. 28 at 8-9, 17-18.) Defendants argue that they are entitled to qualified immunity on Plaintiff's First Amendment Free Exercise Clause and Establishment Clause, and Fourteenth Amendment Equal Protection Clause claims. (ECF No. 196-1 at 35-46.) Defendants contend they are entitled to qualified immunity because no law clearly established that designating NOGE a STG violated Plaintiff's constitutional rights. (*See id.*)

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There is a two-step inquiry into whether qualified immunity applies: (1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), abrogated in part by *Pearson v. Callahan*, 555 U.S. 223 (2009). The court may grant qualified immunity on either prong. *See, e.g., Pearson*, 555 U.S. at 243-245 (evaluating only *Saucier's* second prong and holding that law enforcement officers were entitled to qualified immunity because the unlawfulness of their conduct was not clearly established).

Qualified immunity applies only to defendants in their individual capacities. *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 572 n.151 (3d Cir. 2017). Qualified immunity also protects only against claims seeking damages. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Kane v. Barger*, 902 F.3d 185, 194 (3d Cir. 2018) (citations omitted). The Supreme Court reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). To determine if the "right at issue" was "clearly established" at the time of the alleged misconduct, the right at issue must be defined "at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). However, "it need not be the case that the exact conduct has previously been held unlawful so long as the contours of the right are sufficiently clear." *Kedra v. Schroeter*, 876 F.3d 424, 450 (3d Cir. 2017); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Courts "typically look to Supreme Court precedent or a consensus in the Courts of Appeals to give an officer fair warning that his conduct would be unconstitutional." *Kedra*, 876 F.3d at 450.

First, the Court must define the right at issue with the appropriate level of specificity. Plaintiff's First and Fourteenth Amendment claims are based on his argument that he faces substantial burdens on his religious exercise due to the NJDOC's designation of NOGE as a STG. (*See* ECF No. 182-1 at 29-30.) Plaintiff acknowledges that the STG classification is what led to the restrictions on Plaintiff's ability to practice his faith. (*See id.*) The restrictions on Plaintiff are STG policy restrictions. As such, the right at issue here is whether Plaintiff, as a NOGE adherent, has a constitutional right not to be designated a member of a STG.

The Court must now determine if that right is "clearly established." Defendants argue that "no prior case in this Circuit demonstrates that NOGE has the constitutional right not to be designated an STG." (ECF No. 196-1 at 45.) Defendant argues that "to the contrary, prior case law repeatedly upheld the STG designation under the Constitution and/or other laws." (*Id.*) Defendants

argue that, based on current binding Third Circuit precedent, a reasonable officer would not have known they were violating Plaintiff's constitutional rights under free exercise, establishment, and equal protection clauses of the First and Fourteenth Amendment by designating NOGE as a STG.

As Defendants note, in *Fraise v. Terhune*, the Third Circuit held that the designation of NOGE as a STG did not violate the Constitution. 283 F.3d 506 (3d. Cir. 2002). The Third Circuit explained that the STG policy was promulgated based on the NJDOC facing "increasing gang violence in correctional facilities." *Fraise*, 283 F.3d at 509. The Third Circuit summarized the following regarding the STG policy:

> The STG Policy defines a STG as:
>
>> A group of inmates, designated by the Commissioner, who may gather together regularly and informally, possessing common characteristics, interests and goals which serve to distinguish the group or group members from other inmate groups or other inmates and which, as a discrete entity, poses a threat to the safety of staff, other inmates, the community, and/or damages to, or destruction of property, and/or interrupting the safe, secure and orderly operation of the correctional facility(ies).
>
> . . .
>
> The STG Policy lists several factors that the Intelligence Section takes into account in considering whether a group should be designated as an STG. [] These include the following characteristics of the group: (1) its history and purpose; (2) its organizational structure; (3) the propensity for violence of the group and its members; (4) actual or planned acts of violence reasonably attributable to the group; (5) other illegal or prohibited acts reasonably attributable to the group; (6) the "[d]emographics of the group," including its size, location, and pattern of expansion or decline; and (7) the degree of threat that the group poses. [] Designation of a group as an STG has the effect of prohibiting inmates from engaging in activities related to the group. Under prison regulations, it is a serious infraction for an inmate to "participat[e] in an activity related to a security threat group," N.J.A.C. 10A:4–4.1(.010), or to "possess[ ] or exhibit [ ] anything related to a security threat group." N.J.A.C. 10A:4–4.1(.011). It is also a serious infraction for

> an inmate to attempt to do either of the above. See N.J.A.C. 10A:4–4.1(.803).

*Id.* at 509-10. The Third Circuit noted that, based on the Holvey Report, the "Five Percent Nation [also known as NOGE] became such a strong presence in New York prisons that Hispanic inmates were prompted to form their own gang, known as the Latin Kings, to protect themselves from attacks by Five Percenters." *Id.* at 512. "The Five Percent Nation became active in New Jersey prisons in the early 1980s and has since become the largest group in the state's prison system." *Id.*

The *Fraise* Court considered and denied the plaintiffs' First Amendment Free Exercise claim, noting that under the first *Turner*[5] factor a "prison regulation fails this prong if it 'promotes an interest that is illegitimate or not neutral, or . . . bears no 'valid, rational connection' to the asserted interest.'" *Fraise*, 283 F.3d at 516 (citing *Waterman v. Farmer*, 183 F.3d 208, 214 (3d Cir. 1999) (quoting *Turner v. Safely*, 482 U.S. 78, 89–90 (1987)). The Third Circuit found that the STG policy is "entirely neutral and does not in any way take religion into account." *Id.* The Third Circuit found that three of the four *Turner* factors "weigh strongly in favor of the STG Policy." *Id.* at 521.

The Third Circuit also denied the plaintiffs' Fourteenth Amendment equal protection claim, finding the NOGE's designation as a STG does not violate equal protection. *Id.* at 521-22. The *Fraise* Court explained that the STG policy makes no reference to religion, and that the Court

---

[5] In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court set out the standard for assessing prison regulations that restrict inmates' constitutional rights. Under *Turner*, a regulation passes muster if it is reasonably related to legitimate penological interests. *See* 482 U.S. at 89. *Turner* instructs courts to weigh four factors when applying this standard: (1) whether the regulation bears a "valid, rational connection" to a legitimate and neutral governmental objective; (2) whether prisoners have alternative ways of exercising the circumscribed right; (3) whether accommodating the right would have a deleterious impact on other inmates, guards, and the allocation of prison resources generally; and (4) whether alternatives exist that "fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." *Id.* at 91.

was not "aware of any evidence in the record that suggests that religion plays any role in STG designation decision." *Id.*

Defendants also cite two New Jersey state court cases that upheld the NOGE STG designation. (ECF No. 196-1 at 45, citing *Venable v. New Jersey Department of Corrections*, 2021 WL 1941843 (N.J. App. Div. May 14, 2021) (upholding disciplinary sanctions against inmate for possessing NOGE materials because NOGE is designated an STG); *Lewis v. New Jersey State Parole Board*, 2019 WL 952032 (N.J. App. Div. Feb. 26, 2019) (upholding Board's denial of parole, in part, by rejecting the inmate's argument that the Board "demonstrated bias by suggesting he belonged to a gang due to his membership in the Five Percent Nation a/k/a Nation of Gods and Earths").

Plaintiff did not oppose this portion of Defendants' amended motion for summary judgment. Rather, Plaintiff only argues that the individual Defendants are not entitled to qualified immunity on Plaintiff's RLUIPA. (ECF No. 204 at 31-32.) However, Defendants have not moved for qualified immunity on Plaintiff's RLUIPA claim.

On the Court's own research, there is no consensus among other circuit court cases finding that a STG designation violates constitutional rights. In *Johnson v. Stewart*, the Sixth Circuit found the "designation of the Nation of Gods and Earths as an STG and the corresponding ban on the Five Percenter newspaper are constitutionally permissible." 2010 WL 8738105 at * 2 (6th Cir. May 5, 2010). The Sixth Circuit found that "the defendants put forth evidence that the Nation of Gods and Earths was designated as an STG because it holds racial supremacist views and has been linked to violence and gang-related activity in other prison systems." *Id.* (citing *Fraise*, 283 F.3d at 516–21 (applying the *Turner* test to conclude that the designation of this group as a security threat was reasonable); *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174

F .3d 464, 469–71 (4th Cir. 1999) (same). Conversely, although not a circuit court case, the United States District Court of the Southern District of New York denied summary judgment under the more stringent RLUIPA standard, stating the court could not find that the department of corrections classification of the "Nation as a security threat group and absolute ban on Nation literature further a compelling security interest and is the least restrictive means of doing so." *Marria v. Broaddus*, 2003 WL 21782633 at *18 (S.D.N.Y. July 31, 2003). The Southern District of New York court noted that the Third Circuit in *Fraise* and the Fourth Circuit in *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters* applied a more deferential standard of review than that required in the RLUIPA analysis. *Id.* at *18, fn. 37. As such, the Court finds that there is no consensus among other Circuit courts on this issue.

Plaintiff's First and Fourteenth Amendment claims rely on whether the NJDOC's designation of NOGE as a STG and the resulting ban on literature and activities violated Plaintiff's constitutional rights. As explained above, the currently binding Third Circuit precedent found that the STG designation is facially neutral and not related to religion. Therefore, the Third Circuit found no constitutional violation in the STG designation of NOGE. Defendants argue, and the Court agrees, that based on the state of law in the Third Circuit and the state of New Jersey, a reasonable officer would not clearly know that they were violating Plaintiff's rights under the establishment, free exercise, and equal protection clauses of the First and Fourteenth Amendments by designating NOGE as a STG and applying to resulting STG restrictions.

Defendants are entitled to qualified immunity on Plaintiff's First Amendment Free Exercise Clause and Establishment Clause claims and his Fourteenth Amendment Equal Protection Clause claim. Therefore, Defendants' amended motion for summary judgment is granted as to this issue, and Plaintiff's First Amendment Free Exercise Clause, First Amendment Establishment

17

Clause, and Fourteenth Amendment Equal Protection Clause claims against Defendants in their individual capacities seeking damages are dismissed with prejudice.

### 3. *Injunctive Relief*

Defendants' final argument is that they are entitled to summary judgment on Plaintiff's RLUIPA and Section 1983 claims for injunctive relief, because "none of these Defendants have or had a direct connection to, or responsibility for, the STG designation of NOGE." (ECF No. 196-1 at 28-31.)

Courts in this Circuit have found that in official capacity suits brought under Section 1983, "[c]laims for prospective injunctive relief are permissible provided the official against whom the relief is sought has 'a direct connection to, or responsibility for, the alleged illegal action.'" *Nicholas v. New Jersey*, 2014 WL 3694149, at *3 (D.N.J. July 23, 2014) (quoting *Hussmann v. Knauer*, 2005 WL 435231, at *6 (E.D.Pa. Feb. 23, 2005) (quoting *Davidson v. Scully*, 148 F.Supp.2d 249, 254 (S.D.N.Y.2001)).)

Defendants submit that the New Jersey Administrative Code specifies that "[o]nly the Commissioner or Deputy Commissioner shall be authorized to designate a group of inmates as a security threat group." (ECF No. 196-1 at 30, quoting N.J. Admin. Code. § 10A:3-11.5.) Defendants argue that because none of the Defendants hold the position of Commissioner or Deputy Commissioner, they do not have the authority to provide Plaintiff with the injunctive relief of removing the NOGE designation as a STG. (*Id.*) Plaintiff does not squarely address this argument in his opposition brief. (*See generally* ECF No. 204.)

Plaintiff seeks removal of NOGE's STG designation and the ability for Plaintiff to practice his NOGE activities. (*See* ECF No. 28 at 18.) The New Jersey Administrative Code designates only the Commissioner or Deputy Commissioner with the authority to designate security threat

groups. However, Defendants do not contend that Defendants Nogan and Sweeney, as administrators at EJSP, are unable to provide any relief to Plaintiff and merely argue that they are unable to remove the STG designation. It is unclear whether Defendants Nogan and Sweeney could provide religious accommodations without removing the STG designation from NOGE. The Court agrees, however, that based on the record before the Court, it does not appear that Defendants Mountcastle-Thomas or Pikunich, as EJSP mailroom employees, could provide Plaintiff with any relief sought. Therefore, Defendants' amended motion for summary judgment on this issue is denied as to Defendants Nogan and Sweeney and granted as to Defendants Mountcastle-Thomas and Pikunich. As such, Plaintiff's claims for injunctive relief against Defendants Mountcastle-Thomas and Pikunich are dismissed with prejudice.

### B. Plaintiff's Cross-Motion for Summary Judgment

In support of his cross-motion for summary judgment, Plaintiff makes several arguments. Specifically, Plaintiff moves for summary judgment on his RLUIPA, First Amendment Free Exercise Clause and Establishment Clause claims, arguing that Defendants have failed to show a compelling governmental interest in imposing substantial burdens on his religious exercise. (*See* ECF No. 182-1 at 22-26, 28-31.) Plaintiff also moves for summary judgment on his Fourteenth Amendment Equal Protection claim, arguing that the disparate treatment is not reasonably related to a legitimate penological interest. (*Id.* at 32-34.)

### 1. *First Amendment Free Exercise Clause and Establishment Clause*

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. The Free Exercise Clause of the First Amendment applies to the states through the Fourteenth Amendment. *Cantwell v. State of Conn.*, 310 U.S. 296, 303 (1940). "Inmates clearly retain

19

protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). Sincerely held beliefs, religious in nature, are entitled to constitutional protection, but "the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." *DeHart v. Horn*, 227 F.3d 47, 50–51 (3d Cir. 2000). A prison regulation alleged to impinge upon an inmate's First Amendment rights "is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Plaintiff argues that the STG classification burdens NOGE practice without a justification reasonably related to legitimate penological interests. (ECF No. 182-1 at 29-30.)

The First Amendment also prohibits the government from establishing a religion. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). When a state law establishes a denominational preference, courts must "treat the law as suspect" and apply "strict scrutiny in adjudging its constitutionality." *Id.* "The government bears the burden to show that the relevant law, or application thereof, is 'closely fitted to further a compelling governmental interest.'" *Catholic Charities Bureau, Inc. v. Wisconsin Labor & Industry Review Commission*, 605 U.S. 238, 248 (2025) (quoting *Larson*, 456 U.S. at 251). Plaintiff argues that the classification of NOGE as a STG, while allowing other religious groups to practice without similar restrictions, constitutes discriminatory treatment without a secular purpose and shows preference for certain religions. (ECF No. 182-1 at 30-31.)

As discussed at length above, the record before the Court presents an issue of material fact regarding whether prison safety is a *current* compelling governmental reason justifying the STG

restrictions placed on Plaintiff's NOGE practice. Therefore, Plaintiff is not entitled to summary judgment on his First Amendment claims.[6]

### 2. *Fourteenth Amendment Equal Protection Clause*

The Equal Protection Clause of the Fourteenth Amendment provides that "no State . . . shall deny to any person within its jurisdiction the equal protection of the laws[.]" *See* U.S. Const. amend. XIV. This is, "essentially[,] a direction that all persons similarly situated should be treated alike." *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). To state a Fourteenth Amendment equal protection claim, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class[.]" *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016). An equal protection claim can also be asserted under a "class of one" theory, whereby a plaintiff alleges that a state actor intentionally treated him differently from others who are similarly situated, "and there is no rational basis for the difference in treatment." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). "[W]hen an inmate asserts an equal protection claim based on the allegedly disparate treatment of different religious groups, the governing standard is whether the disparate treatment is 'reasonably related to legitimate penological interests.'" *Fraise v. Terhune*, 283 F.3d 506, 521 (3d Cir. 2002) (quoting *DeHart v. Horn*, 227 F.3d 47, 61 (3d Cir. 2000) (en banc)).

Here, the Amended Complaint asserts an equal protection claim based on Plaintiff's membership in a protected class—that is, his religious affiliation of NOGE. Plaintiff argues that Defendants discriminated against Plaintiff and treated him differently from other religious groups

---

[6] The Court has dismissed Plaintiff's First Amendment claims against Defendants in their individual capacity for monetary damages based on Defendants' entitlement to qualified immunity. Therefore, Plaintiff's First Amendment Free Exercise Clause and Establishment Clause claims for injunctive relief remain.

of inmates because of his membership in NOGE. (ECF No. 182-1 at 32-34.) More specifically, Plaintiff alleges that Defendants discriminated against him and treated him differently by placing the STG classification on him and not on any other religious groups of inmates, such as those practicing Asatru beliefs. (*Id.*) Plaintiff argues that prison safety is not a compelling justification for this disparate treatment. (*Id.* at 33.) Defendants oppose summary judgment, arguing that in *Fraise*, the Third Circuit upheld the lower court's dismissal of plaintiff's equal protection claim, finding that "[i]in view of greater propensity for violence demonstrated by members of [NOGE], we hold that the group's designation as an STG does not violate equal protection." (ECF No. 196-1 at 37, quoting *Fraise*, 283 F.3d at 522.)

In *Fraise*, the Third Circuit affirmed the dismissal of plaintiff's equal protection claim. 283 F.3d 521-22. However, here, Defendants present the 1997 Holvey Report in support of the position that Defendants have a legitimate penological interest in maintaining prison safety, while Plaintiff submits that, in over thirty years of imprisonment, he has not been cited for a violent infraction and there are no recent incidents of violence by NOGE adherents at EJSP. Again, as explained above, the Court finds there is an issue of material fact regarding whether the disparate treatment of NOGE members is related to a current legitimate penological interest, i.e., prison safety. As such, Plaintiff's cross-motion for summary judgment is denied as to this claim.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Defendants' amended motion for summary judgment (ECF No. 196) is **GRANTED in part**. Plaintiff's Section 1983 claims against Defendants in their individual capacity for monetary damages are **DISMISSED *with prejudice***. Plaintiff's RLUIPA and Section 1983 claims against Defendants Mountcastle-Thomas and Pikunich for injunctive relief are **DISMISSED *with prejudice***. Plaintiff's RLUIPA and Section 1983 claims against

Defendants NJDOC, Nogan, and Sweeney for injunctive relief remain. Plaintiff's cross-motion for summary judgment (ECF No. 182) is **DENIED**. An appropriate Order accompanies this Opinion.

**DATED**: November 4, 2025

HONORABLE JULIEN XAVIER NEALS
United States District Judge